IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | | |
|---|---|---|
| AMY C. PIGOTT, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. |
| | ) | |
| v. | ) | Judge |
| | ) | Magistrate Judge |
| BATTLE GROUND ACADEMY and | ) | |
| JOHN W. GRIFFITH, | ) | Jury Demand |
| | ) | |
| Defendants. | ) | |

## COMPLAINT

For her Complaint against Defendants The Battle Ground Academy of Franklin Tennessee ("Battle Ground Academy" or "BGA") and John W. Griffith, Plaintiff Amy C. Pigott states:

### PARTIES

1. Plaintiff Pigott is a citizen and resident of Nashville, Tennessee, and a former employee of BGA.

2. Defendant BGA is a Tennessee corporation and private educational institution with its principal place of business in Franklin, Tennessee.

3. Defendant Griffith is the headmaster or principal of BGA.

4. Defendants may be served with process through BGA's registered agent, Defendant Griffith, at their principal place of business at 336 Ernest Rice Lane, Franklin, Tennessee 37069.

### JURISDICTION AND VENUE

5. This is an action for age discrimination in employment and retaliatory discharge from employment brought under the Age Discrimination in Employment Act of 1967, as

amended, 29 U.S.C. § 621, *et seq.* ("ADEA"), the Tennessee Human Rights Act, Tenn. Code Ann. § 4-21-101, *et seq.* ("THRA") and Tennessee common law. The Court has jurisdiction under 28 U.S.C. §§ 1331 and 1367(a). Venue is proper under 28 U.S.C. § 1391. Ms. Pigott has met all conditions precedent to the filing of this complaint. She timely filed a Charge of Discrimination with the U.S. Equal Employment Opportunity Commission on or about January 24, 2011, and the EEOC mailed her a Notice of Right to Sue on July 28, 2011.

## FACTS

6. Ms. Pigott worked for BGA as an upper school or high school French and English teacher from 1999 until Defendants terminated her employment on September 2, 2010.

7. Ms. Pigott is 54 years old as of the date of the filing of this complaint.

8. Ms. Pigott was qualified for her job at BGA based on her education, experience as a teacher, and possession of the skills required to perform her job. She has a bachelor's degree from the University of Tennessee. She majored in English and has minors in French and Psychology. She is certified to teach all three subjects at the high school level. Ms. Pigott has taught French and English in public and private schools for approximately 27 years. She held and satisfactorily performed her teaching job at BGA for approximately 11 years.

9. Defendants treated Ms. Pigott differently in the terms, conditions and privileges of employment than they treated similarly situated, substantially younger employees who did not oppose, report or express concerns about age discrimination. In or about March 2009, Defendant Griffith advised Ms. Pigott for the first time that, despite her prior experience and job performance, she needed to obtain a master's degree in French to continue teaching at BGA.

10. Ms. Pigott asked Griffith why she needed to obtain a master's degree in French after having successfully taught French and English at BGA for over 10 years. Griffith

responded that it was "just a matter of [her] qualifications" and that "a school like BGA cannot have teachers without majors in the subjects that they teach."

11. Several other teachers at BGA did not have undergraduate majors, much less master's degrees, in the academic subjects that they taught at BGA. Griffith did not require other teachers to obtain majors or degrees in the subjects that they taught as a condition of their continued employment.

12. Ms. Pigott and certain of her colleagues at BGA opposed or expressed concerns about Griffith's discriminatory mandate. They asked Griffith why Ms. Pigott was being required to obtain additional formal education while several other teachers who did not have majors or degrees in the subjects that they taught at BGA were not required to do so. Griffith offered no reasonable answers or explanations.

13. In the spring of 2009 Ms. Pigott reminded Griffith that she would not be able to begin any master's degree program in the summer of 2009 due to a continuing education and immersion program in Lyon, France, and Milan, Italy. She had previously agreed and made arrangements to participate in this program.

14. In the spring of 2010 Griffith again advised Ms. Pigott that she needed to obtain a master's degree in French. Once again he did not impose any such continued formal education requirement on younger, similarly situated teachers. Defendants allowed those teachers to continue teaching subjects in which they did not have majors or degrees.

15. In the spring of 2010 Ms. Pigott made good-faith efforts to comply with Griffith's continued discriminatory mandate. She contacted local universities and colleges and inquired about master's degree programs in French. At the time the schools were not offering courses in

the evenings or at times when Ms. Pigott was not obligated to teach classes at BGA. Ms. Pigott also applied to the master's program in French at Middlebury College in Vermont.

16. In April 2010 Ms. Pigott advised Griffith that she had begun the application process and planned to enroll in the graduate program in French at Middlebury College in the summer of 2010. She had every intention of doing so. After speaking with representatives of the college, however, she learned that it would be very expensive to attend the program over the course of four summers in Vermont. Ms. Pigott attempted to obtain reasonable financial assistance from BGA, to no avail.

17. In light of the substantial cost of the Middlebury program, Ms. Pigott was not reasonably able to enroll in it without substantial financial assistance. She so advised the principal or head of BGA's upper school, Larry McElroy, on or about May 24, 2010. McElroy stated to Ms. Pigott that he understood her decision.

18. Because she felt discriminated against and harassed by Griffith, Ms. Pigott wrote and sent a letter dated May 31, 2010, to a member of BGA's Board of Directors, Jim Cross. In her letter Ms. Pigott advised Cross that she would not be able to attend the Middlebury program due to its cost and the lack of financial assistance. She also opposed, reported and expressed concerns about discriminatory treatment. The letter states Ms. Pigott's belief that Griffith wished to replace her with "a much younger teacher" who had applied at BGA. It further states, "I think I speak for all of us who have the misfortune of being 50 or older in saying that our veteran status is not seen as a positive…much to the contrary. We all feel that our days are numbered as long as [Griffith] is in charge."

19. BGA failed or refused to respond to Ms. Pigott's letter. It failed or refused to communicate with her about her stated concerns. It failed or refused to promptly and thoroughly investigate and attempt to remedy those concerns.

20. On August 17, 2010, having not heard anything from BGA about her expressed concerns, Ms. Pigott sent a letter to Griffith explaining her inability to attend the Middlebury program. She further opposed the discriminatory treatment to which she had been subjected, stating, "I would hope my age and experience would be seen as a positive, not a negative." She again inquired as to why she was being discriminated against. Like BGA, Griffith never responded to Ms. Pigott's concerns.

21. In between August 17 and August 27, 2010, McElroy advised Ms. Pigott that Griffith was extremely angry that she had sent her May 31, 2010, letter to BGA Board member Cross.

22. On August 27, 2010, after having already entered into a signed employment contract with Ms. Pigott for the 2010-2011 academic year, BGA advised Ms. Pigott that she was being discharged because she 1) wrote a letter to a Board member and 2) had not begun working toward a master's degree in French.

23. In the August 27, 2010, discharge meeting, McElroy confirmed to Ms. Pigott that he recalled her advising him on or about May 24, 2010, that she would not be able to attend the Middlebury program in the summer of 2010 absent substantial financial assistance and that he had stated that he understood her decision.

24. Defendants discharged Ms. Pigott on or about September 2, 2010. They replaced her with a 34 year-old teacher.

25. Defendants' stated reasons for discharging Ms. Pigott are pretexts for age discrimination and/or retaliation. Ms. Pigott had started working toward a master's degree in that she diligently attempted to locate a program in which she reasonably could enroll without substantial financial assistance from BGA. That she had not begun taking master's degree courses in French is insufficient to motivate her discharge. Other similarly situated, substantially younger teachers at BGA who did not oppose, report or express concerns about age discrimination do not have undergraduate majors or master's degrees in the subjects that they teach at BGA; those teachers have not been advised that they must obtain additional majors or degrees lest they be discharged; and those teachers continue to teach at BGA. Additionally, upon information and belief, Griffith recently attempted to hire another younger individual to teach a subject at BGA in which he did not major or have an advanced degree, but that teacher turned down the offer of employment.

26. Defendants' alleged requirement that upper school teachers at BGA must have majored or obtained degrees in the particular academic subjects that they teach at BGA is illegitimate and pretextual.

27. Defendants' discharging Ms. Pigott for writing a letter to Board member Cross in which she opposed, reported and expressed concerns about age discrimination was illegal.

28. Defendants cannot prove by a preponderance of the evidence that their stated reasons for discharging Ms. Pigott are legitimate and not pretextual. No reasonable jury could find in Defendants' favor based on their stated reasons.

29. Defendants discriminated against Ms. Pigott based upon her age in violation of the ADEA and the THRA.

30. Defendants retaliated against Ms. Pigott for opposing, reporting and expressing concerns about age discrimination, in violation of the ADEA, the THRA and Tennessee common law.

31. Griffith aided and abetted BGA or its agents in the commission of, and incited, compelled or commanded them to engage in, the discriminatory and retaliatory conduct described above and also retaliated against Ms. Pigott, in violation of Tenn. Code Ann. §§ 4-21-102 and 301.

32. Defendants' conduct as described above was willful, intentional, reckless, malicious, and/or fraudulent.

33. As a result of Defendants' conduct, Ms. Pigott has lost income and other privileges and benefits of employment; suffered embarrassment, humiliation, emotional distress, anxiety, harm to her professional reputation, inconvenience, and loss of enjoyment of life; and has incurred attorney's fees, costs and litigation expenses.

## RELIEF REQUESTED

Ms. Pigott respectfully requests:

1. A jury trial;

2. Back pay and benefits;

3. Reinstatement or, alternatively, front pay and benefits;

4. Compensatory damages for embarrassment, humiliation, emotional distress, anxiety, harm to professional reputation, inconvenience, and loss of enjoyment of life;

5. Liquidated damages;

6. Punitive damages for retaliatory discharge;

7. Attorney's fees, costs and litigation expenses;

8. Prejudgment interest and, if applicable, post-judgment interest; and

9. Such other and further legal or equitable relief to which she may be entitled.

Respectfully submitted,

*[signature]*

Douglas B. Janney III (BPR No. 19112)
2002 Richard Jones Road
Suite B-200
Nashville, Tennessee 37215
(615) 742-5900

Attorney for Plaintiff